The second appeal of the morning is in No. 23-1725, Robert Decker v. Katherine Sireveld and others. Yeah, Mr. Bruton, good morning, whenever you're ready. Good morning, may it please the Court, Hunter Bruton, on behalf of Plaintiff Appellant Mr. Decker, along with Eric Zimmerman at Council's table, would like to reserve five minutes for rebuttal. Mr. Decker is asking for narrow relief to which he is constitutionally entitled, access to freely downloadable PDFs of the Federal Register. Defendants already provide electronic access to PDFs as part of the Federal Register, and defendants do not deny that they could download PDFs of the full Federal Register with only three clicks for free. The question is whether defendants can refuse to make those three clicks, and they cannot. Mr. Decker has a First Amendment right to read and comment on administrative rulemaking. Defendants are infringing that right by denying Mr. Decker access to the full Federal Register, and defendants lack a ballot justification for that infringement. Mr. Bruton, are your claims under the APA, or are they straight First Amendment claims? So, it is a First Amendment claim brought pursuant to the APA, so under the APA. Okay, so the APA framework applies, you agree? Yes, Your Honor. Under the APA, if an action is unlawful under the Constitution as a matter of law, then reversal is warranted, and the standard of review here is de novo on summary judgment. In that regard, the government put on no actual evidence of cost below. I would point this court to its decision last year in Ahmaud. We have cautioned prison officials that they cannot rely on the mere incantation of a penal interest, but must come forward with record evidence that substantiating the interest is truly a risk. What about their affidavit, where they state in paragraph 7 that it would be impractical, highly burdensome, and far exceed the BOP's limited budget and staffing resources? So, that is similar to the incantation of security interest in Ahmaud, and in other cases cited in our briefs, it's been held that those kind of affidavits are rote assertions, so they need some actual evidence of cost. But in the other cases you're relying on, the plaintiff had come forward with evidence that called that into question. So, in Ahmaud and Jones v. Van Lannan, this court also made clear that a pro se prisoner litigants verified complaint and briefs can serve as evidence of the summary judgment standard. Here, we are relying on Mr. Decker's de minimis alternative of providing the federal register electronically. He provided all the evidence he could on that. He doesn't have access to the internet, so he can provide a more developed showing. It's also another reason why he needed counsel below. Going back to paragraph 7, again, part of the Turner analysis is comparing the de minimis alternative to a substitute that the defendants put forward, and here in that same paragraph they say it would be impractical, highly burdensome, and far exceed the limited budget and staffing resources to distribute paper copies every day. Can I ask you a question in my ignorance of the federal register? The way I understand the way the federal register works is there may be new things published in the federal register every day, but the period in which they're published is longer than one day. So, I think what your client is asking is not that the BOP download a new version of They can probably do it once every 10 days, let's say, so long as they capture the notice period, whatever the notice period is, 14 days, 30 days, whatever. It may be that they can download it. These are facts that would have to be developed in the district court if we were to remand, but they may be able to download it once every 30 days, let's say, and that may put more of a burden on your client. It's easier to read the newspaper every day than it is to read the newspaper once every 30 days, right? But it may be that he could review it once every 30 days. It would be harder for him, but he's not asking for it every day is the way I understand it. That's right, and on appeal, we've also said once a week might suffice. I think your Honor's hit it on the head. So, comment periods will be 30 days at least unless regulation isn't required to undergo notice and comment. So, as long as Mr. Decker is obtaining some version of the PDF of the Federal Register in a way that would allow him to comment on rules, that would be sufficient injunctive relief. So, there are some regulations also that will have 180-day periods or even longer. And so, again, the question is just whether Mr. Decker can get these regulations in time to comment on them, like the FCC regulations on prison calls, HUD housing, things that Mr. Decker is worried about both while he's in prison and when he gets out. Was there any development in the District Court regarding the manner in which and the time it takes for the BOP to go through and sort of splice out regulations which they provide to prisoners versus the other? I mean, it just seems, and I'm asking, it just seems to me like it'd be easier to just publish the whole doggone thing than to parse out here's what may apply and here's what may not apply. Agreed, Your Honor. And we don't have evidence, but we think it stands to reason with common sense that it may actually save the BOP time and money if they're not having to parse through BOP regulations. And we also note, as we did in a footnote in the opening brief, that the BOP actually missed three of its own regulations in the timeline that it says. So, and again, the only evidence we have is a Qureshi declaration and then her supervisor's declaration who was, I guess, took over the job. We don't know exactly how it works. It's framed in the passive voice as these things are posted to the electronic bulletin board. But, and perhaps the government can shed more light on this, but I think there's probably two realities here. Either one, Ms. Qureshi or someone who would be in her office now in D.C. uploads these PDFs to a terminal and that terminal pushes out to prisons, or there could be a prison staff official at each federal correctional institute that takes an email from Ms. Qureshi or someone similar and then posts it on the electronic bulletin board. I think it's important to note that, again, going back to the substitute they're comparing it to, the reasonable alternative, they say, is there is mail. And we've explained in our opening brief with record sites why mail is not a reasonable alternative for Mr. Deckard. But I think I'm… Mr. Brewer, can I… Sorry to interrupt you. Go ahead and finish your thought. Oh, no. Excuse me, Your Honor. I was just going to say you have to compare how long it would take a prison official to process many, many mailed copies of the Federal Register to somebody downloading a PDF with three clicks and posting on the electronic bulletin board. So, I've got a broader question I'll come to in a second. But on that point, I noticed in preparing for argument that there are many states, at least the states in our circuit, that maintain state registries, the state analog. And I looked at Indiana in particular, just randomly pulled it up, and either three or four mouse clicks, you can get the Indiana one in a PDF, too. So, the point I'm making is to ask you about the limiting principle here, that it just seems that the next case is about the Indiana registry, and then we're on to the Alaska registry, and, you know, et cetera, et cetera, all kinds of publicly available information that a prisoner could allege or advance an interest in as part of indicating First Amendment rights. Where does this end? So, I think this case provides two limiting principles. One is the APA, and two is a time-tested Turner test. So, taking your hypothetical, Your Honor, I don't believe a state APA would allow a suit against a federal official. Here we have the APA providing the waiver of sovereign immunity and the cause of action for unconstitutional or arbitrary and capricious actions. Right, but couldn't you just bring your 1983 action and see, you know, declaratory relief or something? So, if you brought an ex parte young suit or an injunctive suit under 1983, right. So, Turner will provide the backstop there, and again, I think the important— Why there but not here? So, to be clear, prisoners have a First Amendment right to read and comment on other things, too, things in the congressional record, other matters of public importance. This Court, in many cases, I'll point you to a literal lawyer and a few of the other criminal cases in the Seventh Circuit, the Court's been able to use Turner in a practical way to say if there's some evidence of cost or if there's a security justification, I think security justification is going to come out in a lot of these cases. So, when you're dealing with non-government materials or newspapers, this Court has parsed out whether or not there's a security justification. So, in tomorrow's—if you're right, in tomorrow's case, if an inmate says, I'm going to be released in a year or two, and I'm planning on living in Indiana, and my interest is being a responsible citizen in Indiana, and therefore I want to follow the affairs of the state as posted in the Indiana Registry, and if Robert Decker was successful in getting the federal registry made available, I should surely be successful in getting the Indiana Registry. After all, it takes three mouse clicks. I think on the facts of that case, and if the prison has no other evidence on cost or security, then the state registry might be provided, but it also matters how the electronic law library might work at that individual facility, if we're talking about a state facility. And again, this is not on the record, but some states also have access to internet. Some states also give prisoners iPads. Most federal prisons do not do that. Correct. They don't have internet access. I don't believe any federal prison has internet access. I don't think it does either, or give them iPads, other than maybe some computer facility to review discovery materials, but not what you're talking about. Like a terminal. Yes, Your Honor. So your point, just take them one at a time. Turner supplies the framework. That's why the Supreme Court put it in place, and you just adjudicate them as they arise. That's correct. And again, there'll be questions about the cause of action against any state, local, federal official. It'll still have to pass all those things. The PLRA is also a backstop, so prisons have grievance procedures set up, and they have to exhaust the grievance procedures. So if a prisoner comes and says, hey, you can download this Indiana State Registry with three clicks. This is how long it'll take. Would you provide it to me? A lot of times, reasonable prison officials are going to say, yeah, we'd rather do that than litigate a federal case for three years. Okay. Here's my other question. It's a broader question. I have some concerns about whether your client has standing. Okay? You've done a terrific job in your briefs representing him. There's no question about it. But you are making points that, to my eye, seem divorced from the way the case was litigated before you and your colleagues, you know, accepted the appointment. And what I mean by that is, to get right to it, is this. When I read Mr. Decker's complaint, and I read what he submitted in opposition to summary there is actual or imminent injury. And what he has said to satisfy that. So I'll answer that question and reserve the remainder if I may. We'll give you rebuttal time. Don't worry about that. So on the standing question, again, I understand it's subject matter jurisdiction. The court breaches it even though the government doesn't contest it. So we're not backing away from the difference from this in access to court claims. Mr. Decker has a freestanding right to comment on the federal register. And he can't be more particular about the regulations he wants to comment on because he doesn't know what the regulations are since he doesn't receive the federal register. So Article 3 just requires traceability. Keep going. Article 3 requires traceability to the injury. The injury is restricted access to non-BOP materials in the federal register. Okay. In fairness, though, he's pretty skimpy on what he says about that. I read all the summary judgment briefing last night. And he is focused in the main on BOP-related. Now, BOP is a big umbrella. He's focused on the First Step Act. He's focused on the affairs of the U.S. Sentencing Commission and amendments to that. But he doesn't anywhere, for example, say, I'm keenly interested in following the affairs of the EPA or, you know, the SEC or whatever. There's nothing like that. And, I mean, I can see standalone sentences where he says, I have an interest in following the affairs of other departments or agencies. But what I think about, I think about the plaintiff in Lujan. You know this case law. Yes. I think about the plaintiff in Clapper, plaintiffs in Clapper, and I think about the justices saying we are serious about subject matter jurisdiction and the injury requirement of standing. Yes, sir. That's not to say he couldn't plead it and develop it at summary judgment, but I very much wonder whether he's done so here. You have in your appellate brief. So, agreed, Your Honor, that Mr. Decker could have done a better job on summary judgment, but we maintain that by Mr. Decker saying he wanted the full access to the full federal register, he did enough for standing. Now, understandably. Why is that enough here but not enough in Clapper? So. So, you know, you remember Clapper? Clapper is the Foreign Surveillance Act. Right. You remember the court said there's nothing here about impending injury. So, if your client, I'll give you rebuttal time. Don't worry about that. Okay. If your client had said, like you do on appeal, at some point, God willing, I'm going to be released here and I'm interested in following what's going on in the Department of Veterans Affairs or HUD or whatever because I'm going to be a responsible citizen when I get out. He might do enough there, but I just don't see it. So, I would also point this court to this case law that says prisoners' complaints and pleadings are construed liberally. I think, to be fair, this issue is a matter of law that's cleanly teed up. If the court has concerns about the pleadings, I think this is also evidence that Mr. Decker should have had counsel below and on remand, the court can allow for an amendment of a complaint. So, one of the reasons that I think you may have… I think your points are fair about the… I don't remember her name. It begins with a G. The affidavit that came in from the BOP. Koreshi, yes. Yeah, okay. It's thin, and you're right to emphasize that. But I wonder whether it's thin in part because Mr. Decker wasn't all that clear about what he wanted. I think in the main, he was focused on criminal justice-related information, broadly construed, sentencing commission, first step act, et cetera. Right, and I think that alone would be enough, right? Sentencing commission is a separate agency from the BOP. Yeah, and then you just wish the case would have gotten litigated that way because if he would have said, hey, I'm a federal prisoner, and I absolutely have an interest in what the U.S. Sentencing Commission is doing and not doing, there's none of this on the bulletin board, and there's none of this in the library. That's a serious claim. So on the record, I will leave the court with Essay 284, and I think this is a helpful quote from Mr. Decker. Mr. Decker has shown and disputed the defendant's theory that I have not demonstrated the failure to provide a complete copy of the Federal Register in real time based on resources and budgetary concerns is, in fact, arbitrary and capricious. What are you reading from? This is Essay 284. I believe this is Mr. Decker's summary judgment, or opposition to summary judgment. All right. And this is not the first paragraph, not a full paragraph. At the top is Essay 284. All right. And again, I agree with the court that the case could have been litigated better. We would submit that that's more evidence, as this court's recognized in appointing counsel twice, that Mr. Decker would have been better off with counsel.  Can I ask a question? Please, yeah. And as Judge Scudder said, he'll give you additional time for rebuttal. Of course. I want to make sure I understand what you were saying about the limiting principle, because I have some concerns of, okay, if he's entitled to this, why couldn't an inmate come in and say they're entitled to a whole host of things? Was your response to Judge Scudder's question that this would only pertain to government materials? It would not pertain to non-government materials? So if he comes in and says I'm entitled to the New York Times online and I don't have it, I have a right to read what's going on and a right to know what's going on in current events and politics, would the same argument apply to that? Well, I think this court in Lindell and Jackson v. Frank already reached that exact hypothetical and said prisons can ban newspapers for security interests, that they don't want the guards going through that. I think to Your Honor's bigger point, as with any other First Amendment inquiry, the higher the level of matter of public importance, the stronger the claim is. I will say one thing briefly about the APA. The APA already provides the way to exercise the First Amendment constitutional rights. Interested persons are provided with a federal register, and they can comment on regulations they are interested in. That is a limiting principle in itself, and there is no New York Times APA. There are plenty of other cases, Lindell and Jackson v. Frank are two very good examples. Littler is another one where district courts are, as Your Honor is aware, well-equipped to kind of do these Turner inquiries and take care of them at the screening stage at 12B6 and at summary judgment. I don't think this case would be a sea change. So your argument is not going beyond the register here, the federal register? That is correct. Mr. Decker, in this appeal, is seeking access to the federal register, and he's entitled to that under the APA and the First Amendment. Thank you.  Thank you, Your Honor. Very well. Yep, of course. Let's hear from Ms. Tan, and we'll come back to you for that rebuttal. Good morning, Your Honors, and may it please the Court. Caroline Tan for the government. The very nature of incarceration imposes limitations on the ability to engage in quintessential First Amendment activities, like going to a town hall or attending a protest. These incidental consequences of incarceration have never been understood to violate the First Amendment, and it no more violates the First Amendment that Mr. Decker's incarceration may pose practical challenges to reading the federal register and submitting comments. Unlike every prior prisoner free speech case to come before this Court, there is no prohibition here on what Mr. Decker wishes to do. The fact that he cannot do so as easily as he would like does not create a constitutional problem for the Bureau of Prisons to solve, and for good reason. As Your Honors have already noted, Mr. Decker asks for the federal register today, but his theory would equally establish a constitutional obligation to provide other materials tomorrow, such as proposed bills in Congress so that he can submit comments to his congressman. The state equivalent of the federal register for each of the 50 states were all state laws and court rules, which Mr. Decker is already seeking in a separate lawsuit. There is simply no limiting principle to Mr. Decker's theory. Mr. Tan, I think this case would be a lot easier had the affidavit said what you just said. Yes, Your Honors. This affidavit is thin, very thin, and it is subject to all the criticism that Mr. Decker, with the help of Mr. Bruton, has leveled against it. It just very, very generically talks about resource limitations, burdens, etc. It just doesn't tell us much. Your Honor, I think that the affidavit is sufficient in light of the Turner Standard. I will note that the declaration itself states in footnote 3 that BOP doesn't regularly post these kinds of materials at the moment because BOP rules and regulations don't come out every single day. In fact, from 2016 to 2018, there were no BOP proposed regulations that were coming down the pipe. So what we are talking about and what is supported in the record is that we would go from a system where BOP posts something a couple of times a year, a few times a year at most, to something where BOP would now be required to post every edition of the Federal Register, whether on a weekly basis, daily basis, etc. Why isn't it just three clicks that could easily be posted on the bulletin board? As we note in our brief, Your Honor, three clicks is what Mr. Decker has asserted to upload one particular Federal Register material. But when we're talking about the course of a year, every single day, whether it's that three clicks quickly becomes thousands of clicks. 150 clicks. 150 clicks. And even if that takes 10 minutes a day, which is just some sort of small number, that amounts to 2,600 minutes in a year, which is over 40 hours in a given year. That's an entire work week, and it's not diminished just because that work week amount of material is spread out over the course of a year. And this Court has already recognized the distinction between one-time requests and a general request, as it did in Lemon. There is a difference when you're asking BOP to do something once versus when you're imposing a recurring obligation that is not going to end. And as we have noted, this case might just be about the Federal Register, but there is no limiting principle to this theory. So what we're really talking about is the other end. I'm interested in that. What are we supposed to do with that? Ignore Turner and say because there's no limiting principle, we're not going to apply Turner based on the facts that we have before us? We're just going to presume that in the future, these parade of horribles, and because of this parade of horribles, we affirm the District Court? No. No, Your Honor. We are not asking you to ignore Turner. We think that we easily meet the standard under Turner. Based on the record itself, we have already told you that BOP doesn't regularly upload this material, so we would go from a world where we upload at most a couple of documents in a year to every set of the Federal Register from now until the end of time. That's supported in the record. That's in the declaration itself, and that is not a de minimis burden. Is that paragraph 7 in footnote 3 you're relying on? That's right, on page 208 of the supplemental appendix. Do you agree that the case—I'm asking this as a broader question. Mr. Bruton may have a thought on it, too. It seems to me that the case has to be analyzed within the Turner framework. Does Judge Kirsch, do you agree with that? We think Turner applies, Your Honor, but we think that this case is significantly easier than every single Turner case to come before this Court because, as we know in our brief, there is no restriction here. Mr. Decker is allowed to read the Federal Register. Okay, the reason I'm asking that is in the district court in your briefing—these are my words, not the government's words in the briefing—you seem to suggest that there's like something you might think of as like a Turner step zero. In other words, that the First Amendment right to petition government is so weak for somebody that is incarcerated and is trying to petition through access to non-BOP-related Federal Register materials that you really don't even need to get into Turner. That's a position the government took in the district court. That sounds to me, my words, like a Turner step zero. Is there such a thing? We think it can be thought of as Turner step zero. It can be also thought of as being part of the Turner framework. Well, hold on. My question is, is there such a thing as Turner step zero, or come up with better words to describe that? Yes, Your Honor, if by Turner step zero you mean you're looking at the restriction at issue and the— And not even evaluating it under the four Turner factors. What supports that? Well, Turner says that an institution is able to impinge on a constitutional right if it meets this particular standard. And so I guess the step zero would be, is there a right that's being impinged in the first place? And I think that— Is it, is there a right that's being infringed, or is there a right? Well, is there a right in the first instance? Yes. And we think that any right here is incredibly weak. Mr. Decker isn't saying, I need this material to challenge my conviction. I mean, this case is not—even though it sounds a lot like an access to court case, it hasn't been litigated that way. So what he's asking is not even just material in order to challenge his own conviction or sentence. He's asking for something to make some generalized comment on the state of the world and to comment on the full range of federal government activity, which includes things from, as we know in our brief, notices regarding studies of wild pigs, updated common carrier list, that sort of thing. Do you have any reaction to my questions about Article III standing? We did not litigate standing in this case, Your Honor. Mr. Decker, as you identified, has not articulated which particular agency material he needs, why he needs it. He's instead asserting a generalized interest in the federal government's activities, which does sound a lot like the standing cases that you have identified. In the district court, all he has really asked for is just the Federal Register, somewhat akin to a newspaper, so he can browse it and see what it is that he wants to comment on, but he hasn't articulated a particular reason. The only specificity that I see relates to criminal justice matters. Yes, that's right, Your Honor. The BOP, the Sentencing Commission, and the First Step Act. Yes, and BOP does provide BOP-related regulations, which should encompass the vast majority of those kinds of interests. It is not in the record, Your Honor, but BOP has worked with the Sentencing Commission to provide Sentencing Commission materials, but that is not in the record. I think that Your Honor has highlighted a very good point earlier, that this theory, if adopted, would be a significant expansion of the First Amendment right again. There is no restriction on what Mr. Decker wants to do. If somebody printed out the PDF of the Federal Register and sent it to him, he would be allowed to read that, and that makes this case very different from every other free speech prisoner case to have come before this court. In Jackson, already, this court has recognized, has upheld an outright ban on one type of content, where the prison's only asserted justification was its resource limitations. This case is significantly easier than Jackson, and so we— I think Mr. Bruton is questioning that BOP resources is a legitimate reason to look at. He's just questioning that it hasn't been proven here. Right. Jackson is relevant inasmuch as that justification was sufficient to uphold an outright ban on that type of content, and our argument here is that justification should equally be sufficient to uphold something that's not a ban at all. Instead, Mr. Decker— I think the challenge is to the evidence supporting that assertion. Again, I guess there are several responses to your question about whether or not BOP has sufficiently articulated its burden. The first, as I noticed, we have stated in the record that this would be a distinct— we'd be going from a situation where we post only a few documents a year to one where you have to post every single edition of the Federal Register. The second is that there is no dispute that we're going— that this would be a recurring task that would be imposed on the BOP ad infinitum. Again, Mr. Decker has framed this as just three clicks, but even accepting his framing, what we're not talking about at the end of the day is three clicks over the course of the year. We're talking about 150 clicks or so on. Ten minutes a day amounts to 40 hours in a given work week. That would not be de minimis if this request—if that 40 hours was consolidated. The fact that it's spread out over the course of the year doesn't change the ultimate burden on the BOP's resources. Based on what's in the record, is that something we can acknowledge? This Court has recognized that you can consider whether or not a connection is self-evident. That's actually in Shimer, which is the case that's in Mr. Decker's brief itself. Part of the reason why the Court thought that the evidence was insufficient in Shimer was that the connection was not otherwise self-evident. The Bureau of Prisons—or, sorry, so that the institution in that case needed to provide a little bit more explanation, but that's not the case here. It is obvious that what we're going from is a world where we don't post all that much to a world where we have to post every edition of the Federal Register. It's reasonable for BOP not to provide this material in its existing law libraries. Ten years ago, you used to provide it in hard copy, right? I might be wrong on the time frame, but the Federal Registry was available in hard copy for a while, correct? Mr. Decker has asserted that, yes, in his filings. I don't know the precise answer to that question. I just wonder if it would be better for the District Court to have determined these facts because I'm not sure that 10 minutes is accurate. It might be 10 seconds. I'm not accusing you. I'm just saying I don't know. I mean, it may be closer to 10 seconds a week than 10 minutes a week, and I have no idea how many employees the BOP has, but it's a lot, and I have no idea how many employees could do something like this. Is it something that can be done from Washington? Is it something that has to be done at every single prison? Could one person be assigned this responsibility as part of his or her job? These are things when considering the resources to BOP that I would like to know. We're here in the Court of Appeals just guessing as to these facts. I think, I mean— That may be the same reason why we're better off with a lawsuit that alleges this stuff, alleges the injury with some particularity, and then the whole thing could get litigated the proper way. It's really—when you look at what's going on on appeal, the government submitted a fine brief, Mr. Bruton submitted a great brief, all that. It is very disconnected from what you see in the district court. I mean, you recognize it as the same case, but that is about it. But, Your Honor, there is no dispute that Mr. Decker is asking for something that would require uploading a daily publication that comes out every day that can be 100 to 500 pages. Is he asking for daily or just in a timely manner to respond within the time period? He's asking for every issue which comes out every day. So, by daily, I just mean he's asking for Monday, Tuesday, Wednesday— None of that's in front of the district court. It's all in the appellate briefs. In the district court, he asked for the Federal Register so that he can decide whether or not— No, I know, but he—yeah, yeah, yeah, definitely that. But this whole business about, well, let's compromise and let's do it every week or every couple weeks or once a month or something just to allow him to exercise the right to comment, that's all the fruit of excellent appellate lawyering. That's not what's in front of the district court when the district court is deciding the summary judgment motion. But this—I guess the legal analysis would not change  because, again, there is no restriction here. He is permitted—I mean, if he wants to read the Federal Register, he can do that tomorrow. If someone sends it to him, he's allowed to read it. There is no ban on that, and he's allowed to submit comments. And that's a critical point that we wanted to emphasize in our brief, that Mr. Decker is actually permitted to do what it is he says throughout this litigation he has wanted to do. And inmates regularly submit comments to the BOP in response to BOP-proposed regulations. They have this existing system. It is currently working. Nothing is stopping Mr. Decker from doing this. The only thing is that he wants—he doesn't think that the BOP's existing law library is good enough, and he wants to seek an injunction to force the BOP to provide the materials that he's asking for. And so it doesn't seem like the legal analysis is going to change at the end of the day. Again, the Supreme Court has, in a number of instances, upheld prison regulations that restrict access to, for example, newspapers and photographs, and there is no constitutional entitlement to this— freestanding constitutional entitlement to this. And even in the context of access to court claims, the Supreme Court has said that there is no right to a law library and that sort of material. So even when you're trying to challenge your own conviction—this was in Lewis— even if you want to challenge your own conviction or sentence, you don't have a right to dictate the contents of a law library, or you don't even have a right to a law library in the first instance. What does the record say, if anything, about the availability of materials from the U.S. Sentencing Commission in BOP libraries? The BOP policy says that it provides U.S. sentencing materials. I can find that page for you, but it is in the program statement, which begins on page 210. The only reason I'm asking that is the BOP, the Sentencing Commission, is a distinct entity from the Bureau of Prisons. They're not one and the same, correct? That is correct. Okay, and so when the United States Sentencing Commission proposes amendments to the sentencing guidelines, are those made available to prisoners? The record states that U.S. Sentencing Commission materials are available, and this latter part is not in the record, but BOP has worked with the Sentencing Commission to make those statements, to make those proposed regulations available and given inmates an opportunity to comment. That latter part is not in the record, though. I mean, that was one of his big focuses. His supplemental opposition to summary judgment is an email. He emails the U.S. Sentencing Commission, so I don't know if the email went anywhere, but the complaint that he was trying to register is that materials from the Sentencing Commission were not available to federal inmates, at least not where he's housed. Well, that's contradicted by the record, Your Honor, and is simply not true. The record does state that BOP policy says that you need to provide U.S. Sentencing Commission materials in addition to BOP materials, and to my knowledge, that is what BOP is doing. Anything further you want to add, Ms. Tan? Unless there are further questions, Your Honor, we urge the court to affirm. Okay. Mr. Bruton, we'll give you that rebuttal that you asked for. Thank you, Your Honors. If I may, two points. One, on record and standing, and two, on the merits record and the mail alternative. So, on the record and standing, we explained why Mr. Decker doesn't have to point to specific regulations. We maintain that position, but to the extent, Judge Scudder, you're operating in the framework of Mr. Decker needing to identify other regulations, I'll point you to SA 49, where he challenges in his brief in support of the complaint, or motion to dismiss, I believe, drug classifications, including the drug classification of LSD. That would be the DEA. I would point you also to SA 31, which is his fourth amended in the operative complaint. Yeah, I thought you might mention that. I don't know what he's talking about. I mean, the drug classification of LSD, what you wonder about is how does that have any personal effect upon him? It's not as if he's going to be able to use LSD while in the BOP.  He has people on the outside who have access. I don't want to get stuck on the drug thing. No, I hear you. I don't know what to make of it either. On SA 31, he mentions drug counseling and mental health. That would be the purview of HHS, possibly. Again, drug laws, DEA, and the U.S. Sentencing Guidelines. On the U.S. Sentencing Guidelines, what the government's pointing to is a 1999 program statement that says the policy is to provide it, but the issue is they don't follow the policies. They're not contesting that they provide it, even all BOP regulations. We can't inject those facts in the appellate posture. If the court thinks those facts are relevant and the right posture is to remand, appoint counsel and allow the record to be developed. Briefly on the standing cases, Clapper, the plaintiffs didn't even know they were being affected by the action. Lujan, nobody had plans to go to the park. Here, Mr. Decker has definite plans to read the Federal Register and BOP stopping him from doing that. Also point the court to FEC v. Aikens, 1998 Supreme Court case. Denial of information gives rise to standing. Again, if the court has jurisdictional concerns, that can also be addressed on remand. Mr. Burton, moving on beyond standing, you've raised a lot of arguments in your brief that were not raised below. Why haven't you waived those? So Mr. Decker, by bringing the substantive count under the First Amendment and under the APA, did enough for preservation under this court's precedent. The government hasn't claimed waiver or even forfeiture here. Of course, it's a matter of prudence, and this court can deem it. But to the extent the court's going to reach out to contest an issue the government doesn't, I would say liberal pro se litigant pleading. We would ask the court to remand, appoint counsel, and have a fair shake at a case that has merit. And I think that's probably the important thing here, too, on the mail. So on the mail, if we credit what the government's saying, they're saying if I can get the ACLU to send every prisoner in the United States a copy of the Federal Register, they will process it in a timely manner. They would rather do that than download a PDF with three clicks for free. That's absurd. And more importantly, it is a record issue. Again, the three clicks for free is not in the record below. We don't know. So you're making these new arguments that the district court didn't have the opportunity to address, and I'm not sure why we should be addressing them for the first time on appeal. So the court is within its authority, obviously, to remand and not enter summary judgment for Mr. Decker. But on the three clicks point, Mr. Decker said the Federal Register is available in the Internet for free. He doesn't have the Internet, so he can't do that. Now, this court can take judicial notice of a website, and the government below submitted screenshots of the Federal Register, which includes the current issue link. Now, I agree. But there's no Internet access at the BOP, so that's not what the standard is. They'd have to put it on the electronic board, and we don't know what that entails because it's not in the record. Your Honor, BOP facilities do have Internet access. Inmates don't have Internet access. Inmates don't, exactly. Correct. But that's how the electronic bulletin board comes out. And to the extent there's a factual question about any of these issues, again, the proper posture is to remand for fact-finding on these issues. Mr. Decker can't do this kind of discovery while incarcerated. He himself, as you noted, doesn't have access to Internet, so he cannot show or depose Ms. Qureshi and say, does it take you 30 seconds or 10 minutes? Well, he could have deposed her. There's nothing that would have stopped him from doing that and asking her about the process. In his motions for appointment of counsel, Mr. Decker said he was not able to get the discovery he sought. He wasn't able to meet and confer with the United States. That was what you would have done on a Rule 16 or Rule 26 or a settlement conference, which Mr. Decker did point out. We have all those record sites. Again, if there are any record sites the court is interested in, I'm happy to file a 28J or respond to supplemental briefing. The court has no further questions. We would ask to reverse and remand and enter summary judgment in favor of Mr. Decker. Now, if the court is not going to grant us that relief, we would ask at least that he get a fair shake with counsel below to develop a very limited factual record and have a chance to work. Thank you. Okay, Mr. Bruton, thanks to you. You accepted this appeal on appointment, correct? Correct. We very much appreciate that. You've served Mr. Decker very well. Mr. Zimmerman, thanks to you and your firm. Ms. Tan, as always, thanks to the government. We'll take the appeal under advisement. Thank you, Your Honor.